## IN THE MATTER OF FREDERIC PIKE.

Suffolk. November 6, 1990. - December 4, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Attorney at Law*, Censure, Suspension, Conflict of interest.

In the case of an experienced real estate attorney who was found by a hearing committee of the Board of Bar Overseers to have violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) and (6), when (1) he induced his client to enter into a lease with the undisclosed intent of taking a commission from the landlord, (2) he encouraged the client to rely on him as an attorney when he had a simultaneous undisclosed fiduciary relationship with the landlord, and (3) he concealed from his client his financial stake in the transaction, and who was also found to have violated S.J.C. Rule 3:07, Canon 5, DR 5-101 (A) and DR 5-105, when he represented both the client and the landlord without obtaining the client's informed consent after full disclosure, this court concluded that the attorney's conduct required that he be suspended from the practice of law for six months and that his reinstatement be conditioned on his passing the multistate professional responsibility examination. [741-746]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on May 15, 1990.

The case was reported by *Wilkins*, J.

*Susan A. Strauss*, Assistant Bar Counsel.

*James F. Meehan & James L. Polianites, Jr.*, for the respondent.

WILKINS, J. We consider the level of discipline that should be imposed on an experienced real estate attorney, admitted to the bar in 1963, who in 1982 and 1983 for his financial aggrandizement and in disregard of the interests of his client, acted both as a broker for the lessor of retail premises in Brookline and as counsel for the tenant of those premises. The attorney urges that we should impose only a public cen-

sure on him for his disciplinary transgressions, and a minor-
ity (four members) of the Board of Bar Overseers (board)
agreed with him. A majority (eight members) of that board,
however, have recommended a three-month suspension, cou-
pled with a requirement that the attorney pass the multistate
professional responsibility examination as a condition of his
reinstatement. Bar counsel, suggesting a suspension for six
months, argues that at least we adopt the board's recommen-
dation of a three-month suspension.

The case is here on a reservation and report by a single
justice of this court, on the information filed by the board
and the record presented in conjunction with the information.
There is no dispute concerning the relevant facts. A simple
recitation of them will show the attorney's intentional abdi-
cation of his professional obligations to his client for his per-
sonal financial gain. A suspension of only three months fails
to send to the attorney, to the bar, and to the public the mes-
sage that we regard such misconduct both as serious and as
an embarrassment to the legal profession. We shall direct the
entry of a judgment suspending the attorney for the period of
six months.

A hearing committee of the board held a hearing and
made findings of fact. The attorney practiced law in a small
firm in Brookline and was also a licensed real estate broker.
The firm leased office space on the second floor of a building
on Beacon Street. In October, 1982, an associate joined the
firm, and it is through him that in November, 1982, the at-
torney came to represent the client in connection with the
client's lease, for use as a gourmet food shop, of the base-
ment and first floor of the building in which the law firm was
located.

The client initially had been interested in leasing space in
Newton, but after talking to the attorney and his associate
on November 22, 1982, the client turned his attention to
renting space in the lower two floors of the Beacon Street
property. The attorney recommended the Beacon Street
premises with the intention of earning a commission from his
landlord if the client leased the space. The attorney had al-

ready discussed a brokerage arrangement for the space with the landlord.

The attorney and the landlord then agreed that the rent for the space would be adjusted to cover the brokerage fee the attorney wanted. The landlord said that he did not care what the commission was as long as he received his expected net rent. During December, 1982, the attorney-conducted negotiations with both the landlord and the client and prepared the lease. Each relied on the attorney to represent his interest in negotiating the lease. The attorney and the landlord entered into a brokerage agreement, providing for the payment of 12% of the gross rental payments over five years, totaling almost $25,000. About the same time, the client and the landlord executed a five-year lease. It was discovered shortly thereafter that the Brookline zoning by-law barred the use of the basement portion of the leased premises for retail purposes.

We recite one significant portion of the hearing committee's unchallenged findings: "[The attorney] knew prior to execution of the lease but never disclosed to [the client] that he had undertaken a fiduciary duty to [the landlord] as broker and was representing [the landlord's] interests, never disclosed the existence or terms of his commission agreement with [the landlord], never disclosed that the Beacon Street rent had been increased to finance his commission, never disclosed that he had a continuing interest in seeing that the lease remained in effect so that he could collect his full commission, never disclosed that his judgment was or reasonably might be affected by his financial interest in the transaction or by his relationship to [the] landlord, never advised [the client] to consult independent counsel, and never sought or obtained [the client's] informed consent to the arrangement."

Problems arose in January, 1983, concerning several provisions in the lease and the client's inability to use the basement for retail purposes. The attorney continued to act for both the client and the landlord. The attorney sent a revised lease to each party in April, and then sent another proposed revision in June. The attorney never told the client that the

landlord had demanded renegotiation of the attorney's brokerage commission, if the rent were to be reduced. The attorney billed the client for services and received commissions from the landlord.

A hearing committee concluded that the attorney violated S.J.C. Rule 3.07, Canon 1, DR 1-102 (A)(4) and (6), as appearing in 382 Mass. 769 (1981), when (1) he induced the client to enter into the lease, with the undisclosed intent of taking a commission from the landlord, (2) he encouraged the client to rely on him as an attorney when he had a simultaneous undisclosed fiduciary relationship with the landlord, and (3) he concealed from his client his financial stake in the transaction.[1] The hearing committee further ruled that, when the attorney represented both the client and the landlord without obtaining the client's informed consent after full disclosure, he violated S.J.C. Rule 3.07, Canon 5, DR 5-101 (A)[2] and DR 5-105,[3] as appearing in 382 Mass. 769, 779 (1981).

---

[1]DR 1-102 (A)(4) and (6) provide that a lawyer shall not: "(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation," or "(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

[2]DR 5-101(A) states: "(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

[3]The relevant portions of DR 5-105 are: "(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105 (C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105 (C).

"(C) In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

The hearing committee recommended a three-month suspension because of the attorney's conflicting representations and his personal interest in receiving a broker's commission ("a willful, dishonest act engaged in for personal profit"). It concluded that the attorney was more interested in his commission than in obtaining the best possible lease for his client; that he was dishonest and deceitful toward his client; and that he had not been acting for the client merely as a non-lawyer broker.

An appeal panel of the board, made up of three of its members, considered the attorney's appeal and unanimously recommended that the attorney receive a public censure.[4] The appeal panel gave what it listed as three reasons for selecting a public censure over a suspension from practice. First, it noted the attorney's previously unblemished record; the possibility that his small firm might go out of business if the attorney were suspended from practice; and its view that "the integrity of the bar and the public's perception of it will not suffer if such a hardship is not visited on respondent for misconduct he is now unlikely ever to repeat." The second stated reason substantially repeats the conclusion of the first reason ("public censure will have the requisite effect of deterring similar conduct by other lawyers"). Finally, the panel was troubled by the disparity between the discipline imposed on the associate and the imposition on the attorney of a suspension from practice. The board had already approved of the private reprimand of the associate, and the reprimand had been administered. In the panel's view "traversing the chasm that separates a private reprimand from a suspension in this case causes too great a disparity in the treatment of two lawyers involved in essentially the same transaction."

---

[4] The attorney's associate, whose disciplinary charges were considered during the same proceedings before the hearing committee, did not appeal from the hearing committee's recommendation that he receive a private reprimand. The hearing committee properly criticized the associate's representation of the client when he knew his firm also represented the landlord. He did not act for personal gain. He was inexperienced and was found to have been too loyal to the attorney.

We find the panel's (and the attorney's) argument for the imposition of a public censure, and not suspension, unpersuasive, as did a majority of the board. The absence of prior misconduct by the attorney carries little or no weight. *Matter of Alter*, 389 Mass. 153, 157 (1983). The indication in the record that the attorney was less than fully cooperative with the board and the harm to the client from the attorney's unethical conduct weigh toward more serious discipline. *Id.*

The asserted wide disparity between the discipline imposed on the associate and a suspension of the attorney from practice does not trouble us. If there was error in the board's imposition of a private reprimand on the associate, the attorney is not entitled to benefit from the error. More important are the significant differences between the unethical conduct of the two and their differing responsibilities. We have recited these differences above (see especially note 4) and need not repeat them here.

The attorney's recommendation of a public censure in this proceeding falls far short of what the public interest requires. The appeals panel noted that the attorney's "conduct cuts at the heart of the attorney-client relationship, and his willingness to place his own financial interest above his client's right to dispassionate professional advice is a serious breach of [the attorney's] fiduciary duties." We agree, and discipline in excess of a token suspension is called for. This is not just a case of unethically representing conflicting interests without the informed consent of all clients. It is a case in which the attorney could not have properly represented both the landlord and the client, even with consent, because it was "obvious that he [could not] adequately represent the interest of each." DR 5-105 (C). Moreover, the attorney had a direct financial interest in the creation and continuation of the lease and acted deliberately for his own benefit and in disregard of his client's interests. In addition, the client was prejudiced as a result of the attorney's unethical conduct.

In those circumstances, we direct that a judgment be entered suspending the attorney from the practice of law for six months, and conditioning his reinstatement on his taking and

passing the multistate professional responsibility examination. If there had been a recommendation of a suspension of one year, the court would have followed it.

*So ordered.*