IN THE MATTER OF DAVID E. NEITLICH.

Suffolk. April 7, 1992. - August 14, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Deceit, Canons of ethics.

In the circumstances of a bar discipline matter, a one-year suspension from
the practice of law was the appropriate level of discipline to be imposed
on an attorney who, in the course of representing a party in a post-
divorce proceeding, perpetrated a fraud on the court and opposing
counsel by actively misrepresenting the terms of his client's pending
real estate transaction. [421-425]

INFORMATION filed in the Supreme Judicial Court for the
county of Suffolk on September 11, 1991.

The case was heard by *O'Connor, J.*

*Marshall Simonds* (*Paul E. Nemser & Laurence A. Mills*
with him) for the respondent.

*Nancy E. Kaufman*, Assistant Bar Counsel.

*Michael Fredrickson* for the Board of Bar Overseers.

LIACOS, C.J. We consider the appropriate level of discipline
to be imposed on an attorney (respondent) who, in the course
of representing a former husband in a post-divorce proceed-
ing, perpetrated a fraud on the court and opposing counsel
by actively misrepresenting the terms of his client's pending
real estate transaction. Based on an information filed in this
court by the Board of Bar Overseers (board), a single justice
entered an order suspending the respondent from the practice
of law for one year. The respondent appealed. The single jus-
tice stayed his order pending the outcome of the appeal. We
affirm the order of the single justice.

The facts are as follows. In January, 1986, the respondent
was retained to represent the former husband (client) in a
post-divorce proceeding in the Middlesex Probate and Fam-

ily Court. The proceeding had been instituted by the client's former wife (wife) for the purpose of obtaining security for the client's ongoing alimony obligations under a 1982 divorce judgment. After a July, 1986, trial, a Probate Court judge approved the wife's request for a $400,000 attachment on the client's realty interest in a Brookline condominium. The judge also issued an order prohibiting the client from "alienating, transferring or encumbering his interest in the condominium without prior permission of the Court."

In January, 1987, the client received an offer to purchase the condominium for $395,000. The offer to purchase, which was drafted by the buyer's real estate broker, designated $15,000 of the $395,000 purchase price for the purchase of certain personalty, including a wall unit, a table, two video cassette recorders, a television, and a chandelier. These terms were incorporated into a purchase and sale agreement drafted by the buyer's attorney. Subsequently, after discussions with his client and with the buyer's attorney, the respondent drafted new documentation for the sale by drafting two separate purchase and sale agreements to take the place of the previous draft agreement. The first agreement drafted by the respondent, a standard form "Condominium Purchase and Sale Agreement" (P&S agreement), covered the sale of the condominium. This document set forth a $370,000 purchase price and omitted any reference to the sale of personalty. The document also gave the buyer the right to terminate the agreement if the attachment on the property was not lifted by March 26, 1987. The second agreement drafted by the respondent, entitled "Purchase and Sale Agreement for Personal Property" (second agreement), covered the sale of personalty. This document specified a $25,000 selling price and listed a number of items of personalty in addition to those listed in the buyer's original offer to purchase. The parties executed both agreements on February 28, 1987, and the buyer paid a deposit of $39,500, of which $14,500 was allocated to the sale of the condominium and $25,000 was allocated to the sale of the personalty.

On March 2, 1987, the respondent filed a motion with the Probate Court seeking removal of the attachment and seeking permission to proceed with the sale. This motion was scheduled for hearing on March 25, 1987, the day before the deadline in the P&S agreement for removal of the attachment. Prior to the hearing, the wife's attorney informed the respondent that she would not be able to attend. She asked the respondent for a copy of the purchase and sale agreement pertaining to the proposed sale and requested an opportunity to have the condominium appraised. The respondent refused both requests, telling opposing counsel that the deal was "legitimate." Opposing counsel responded that the wife could not agree to the proposed sale without further information. She subsequently sent a letter to the Probate Court outlining the basis for her objection to the sale. This letter was received by the court on or before March 25; the respondent testified before the committee that he did not receive a copy of the letter until after the hearing.

On March 25, 1987, the respondent presented his motion to the Probate Court. When the judge asked respondent whether he had spoken to opposing counsel about the sale, respondent answered that opposing counsel "was not really opposed" to the sale but that she wanted an appraisal, to which the respondent did not think she was entitled. The respondent also explained that the deadline to have the attachment removed was the following day, and in two separate statements he represented to the judge that the purchase price was $370,000. The judge then entered an order permitting the sale of the property and requiring that the proceeds of the sale be placed in an escrow account.

Subsequently, when the wife's attorney learned of the judge's March 25 order, she filed a motion requesting the judge to vacate the order and to order the client to provide documentation of the sale, "including but not limited to the Purchase and Sale Agreement and . . . any and all agreements and documentation with respect to sale of personalty located therein." This motion was heard by the judge on May 12, 1987. At the hearing, the wife's attorney claimed

that she had not been informed of the terms of the sale. The respondent offered to provide her with a copy of the P&S agreement, to which the judge responded, "She is entitled to more than that at this point." The respondent stated, "That's all there is," and he again represented that the sale price was $370,000.

At the conclusion of the hearing, the judge vacated the March 25 order and issued a memorandum and order providing that "[t]he moving party in this action is entitled to know the terms of the proposed sale." In response, the respondent gave opposing counsel a copy of the P&S agreement. He then filed another motion for relief from judgment. This motion was heard on May 20, at which time the wife's attorney objected to the sale because the $370,000 purchase price would leave insufficient funds to secure the alimony obligation. The judge responded to this objection by allowing the sale on the condition that substitute security be provided.

After the May 20 hearing, the wife's attorney learned from the buyer's attorney of the existence of the second purchase and sale agreement. She obtained an attachment of personal property and of all escrow funds held by the respondent. After an unsuccessful attempt to claim a lien on $25,000 of the escrow account as his fee for representing the client, the respondent turned the full deposit over to a court-appointed master, who also received the net proceeds from the condominium sale.

Bar counsel filed a petition for discipline against the respondent on November 28, 1989. After a four-day hearing, a hearing committee (committee) concluded that the respondent's representations to the Probate Court and his opposing counsel concerning the terms of the sale of the condominium violated Canon 1, DR 1-102(A) (4), (5), and (6), as appearing in 382 Mass. 769 (1981), and Canon 7, DR 7-102(A) (5) and (7), as appearing in 382 Mass. 784 (1981).[1] In reaching

[1]The provisions of these rules are: "CANON 1 - A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession.
" . . .
"DR 1-102. Misconduct.

this conclusion, the committee determined that, in light of opposing counsel's request for full disclosure of the terms of the sale, and in light of the Probate Court judge's order indicating that opposing counsel was entitled to such disclosure, the respondent's failure to make full disclosure and his misrepresentations as to the terms of the sale constituted "knowing concealment" and were "deliberate, planned attempts . . . to conceal from the Court and his opponent the full terms of the proposed sale." The committee also determined that the respondent had made "active misrepresentations as to the non-existence of the second agreement." The committee rejected bar counsel's recommendation of a one-year suspension, however, concluding that public censure was the more appropriate sanction.

---

"(A) A lawyer shall not:

" . . .

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

"Canon 7 - A Lawyer Should Represent a Client Zealously Within the Bounds of the Law.

" . . .

"DR 7-102. Representing a Client Within the Bounds of the Law.

"(A) In his representation of a client, a lawyer shall not:

" . . .

"(5) Knowingly make a false statement of law or fact.

" . . .

"(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent."

The committee cited four specific instances of misconduct as constituting violations of these disciplinary provisions: (1) the respondent's representations to the court on March 25, 1987, that the sale price was $370,000; (2) the respondent's representations to the court on March 25, 1987, that there was only one purchase and sale agreement; (3) the respondent's representations to the court and opposing counsel on May 12, 1987, that the sale price was $370,000 and that the purchase and sale agreement that he offered to counsel that day was the only agreement pertaining to the sale; and (4) the respondent's "failure to disclose, and knowing concealment of, the existence and terms of the second purchase and sale agreement to either the court or his opponent, from March 2, 1987 through May 20, 1987."

Following the committee report, the respondent and bar counsel entered into a stipulation accepting the committee's findings and recommendation and waiving the right to appeal.[2] Subsequently, the board adopted the committee report but rejected the recommendation for public censure. The board made a preliminary recommendation of a one-year suspension and sent the matter to an appeal panel for a hearing on disposition. The appeal panel, on bar counsel's recommendation, recommended a six-month suspension, indicating that, "[i]f Bar Counsel had sought a one-year suspension . . . we would have agreed." The matter then went back to the board, which rejected the appeal panel's recommendation of a six-month suspension and instead voted to recommend a one-year suspension. The matter then came before a single justice of this court, who accepted the board's recommendation that the respondent be suspended from practice for one year.

*Discussion.* The sole issue before us is whether the order of the single justice imposes the appropriate level of discipline on the respondent for his misconduct. In making this determination, we review the judgment of the single justice to determine whether the sanction imposed was "markedly disparate" from the judgments in comparable cases. *Matter of Palmer, ante* 33, 37-38 (1992). *Matter of Alter,* 389 Mass. 153, 156 (1983). The respondent acknowledges that we should employ this standard of review but argues that, in determining which cases of misconduct are comparable to his own, we should look beyond the bare finding that he perpetrated a fraud on a court and examine the precise nature of his misconduct. According to the respondent, the context of

---

[2]The stipulation provided that each party agreed to accept the committee's report and recommendation for discipline; to waive his or her right to appeal that report and recommendation; and to request the board to adopt the report and recommendation as filed. The parties further agreed to request the single justice or the full bench of the Supreme Judicial Court to accept and adopt the report and recommendation as filed. Finally, the parties agreed that, if the board did not accept the committee's recommendation for discipline, the parties would request the board to assign the matter to an appeal panel of the board for a hearing on disposition.

his misconduct "qualifies the conclusion that he perpetrated a fraud on opposing counsel and the court." We disagree.

The essence of the respondent's argument is that, because his failure to disclose the sale of the personalty arose in the context of a proceeding to lift a real estate attachment, and because only attached realty was directly at issue in that proceeding, his representations that the sale price of the condominium was $370,000 were "technically correct." To have volunteered the existence of other, unattached assets, the respondent argues, would have been contrary to his client's interest in sheltering those assets from certain attachment. The respondent further contends that only his statement at the May 12 hearing, that "[t]hat's all there is," constituted an affirmative misrepresentation, and that this statement, standing alone, does not warrant a one-year suspension because it was made during a contentious hearing at which the respondent was faced with conflicting duties to his client and to the court.

The fundamental flaw in the respondent's argument is that it ignores the findings of fact. The committee found that the respondent went beyond merely holding his cards close to his vest after opposing counsel began to suspect that there might be more to the sale than the sale of realty. The committee found the respondent actively misrepresented to the court and to opposing counsel that the purchase and sale agreement pertaining to personalty did not exist. Additionally, after the respondent had been called on by opposing counsel and the court to disclose the terms of the sale, the respondent deliberately concealed the existence of the second agreement. These findings warrant the conclusion that the respondent did indeed perpetrate a fraud on the court and opposing counsel. Having stipulated to the accuracy of these findings, the respondent cannot now circumvent that stipulation in the guise of an argument regarding the appropriate disposition of his case.[3]

---

[3]The respondent has not argued that the findings are not supported by substantial evidence, and thus we need not decide whether we would enter-

Further, to the extent that the respondent argues that the seriousness of his misconduct is diminished by the fact that he was faced with a "conflicting" duty to his client and to the court, this argument is without merit. As an officer of the court, an attorney is a "key component of a system of justice," *Nix* v. *Whiteside*, 475 U.S. 157, 174 (1986), and is bound to uphold the integrity of that system by being truthful to the court and opposing counsel. Where this duty is in seeming conflict with the client's interest in zealous representation, the latter's interest must yield. Were we to condone any action to the contrary, the integrity of the judicial process would be vitiated. See *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (fraud on the court is a "wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"). As stated by Justice Quirico, "[T]he courts have emphasized an attorney's duty of candor, stemming from his role as an officer of the court . . . The more persuasive judicial decisions require an attorney to bring material facts to the attention of the court when ignorance by the court is likely to produce an erroneous decision and not just when his opponent is and will remain ignorant." *Matter of Mahlowitz*, 1 Mass. Att'y Discipline Rep. 189, 193-195 (1979).

Thus, with the precise nature of the respondent's misconduct in mind, we conclude that the single justice appropriately imposed a one-year suspension. In reaching this conclusion, we note that the ABA Standards for Imposing Lawyer Sanctions recommend the even more serious sanction of disbarment where an attorney, with intent to deceive a court, makes a false statement or "improperly withholds material information." ABA Standards for Imposing Lawyer Sanctions § 6.11 (1986). Moreover, a one-year suspension is consistent with the discipline imposed in *Matter of Grossman*, 3

---

tain such a challenge where a respondent has stipulated previously to the accuracy of hearing committee findings. In any event, our review of the record reveals that the findings are supported by substantial evidence.

Mass. Att'y Discipline Rep. 89 (1983), the case in this juris-
diction which we find to be most closely analogous to the re-
spondent's case. While the attorney's misconduct in *Gross-
man* (filing a petition for custody which falsely stated that
the client had previously been granted custody in another ju-
risdiction; misrepresenting that location of child's mother
was unknown; and failing to give notice to an opposing
party) was arguably more serious than in the present case,
the single justice's decision to impose a one-year suspension
came after the attorney presented a number of mitigating
factors. We conclude that a one-year suspension in this case
is consistent with the sanction imposed in similar cases. In
this respect, we reject the respondent's argument that his
case is more similar to *Matter of Mahlowitz, supra* at 194.
That case involved an attorney who failed to correct the
court's misapprehension that there existed a prior court order
in effect restraining the sale of certain property. The attorney
in *Mahlowitz* was not responsible for creating that misappre-
hension. By contrast the respondent in the present case was,
as bar counsel aptly noted at oral argument, the "author" of
the fraud on the court. Such conduct warrants a more serious
sanction than that imposed in *Mahlowitz*.[4]

Finally, although the record is unclear whether the respon-
dent presented evidence in mitigation below,[5] we have con-

---

[4]Likewise, we reject the respondent's contention that his misconduct was
much less serious than that involved in *Matter of Orfanello*, 411 Mass.
551 (1992), and that, in light of the three-month suspension imposed in
that case, a one-year suspension of the respondent is markedly disparate.
The misconduct in *Orfanello* — approaching a judge to attempt to influ-
ence a case — was clearly improper, but the judge was at least aware of
the attorney's misconduct and thus was in a position to respond.

[5]The committee's report indicates that "[t]he Respondent has chosen to
protest his innocence, and therefore argues no factor in mitigation, nor do
we find any." The respondent has argued that it was not inconsistent for
him to protest his innocence while at the same time offering evidence in
mitigation. We agree that an attorney should not be precluded from argu-
ing both positions. Because the record is unclear whether the committee
refused to consider the evidence, or whether the respondent simply failed
to present it, we give the respondent the benefit of the doubt and consider
the evidence.

sidered the mitigation evidence offered by the respondent and remain convinced that a one-year suspension is appropriate. That the respondent has no record of prior discipline is a typical mitigating circumstance which carries "little or no weight." *Matter of Pike*, 408 Mass. 740, 745 (1990). *Matter of Alter*, *supra* at 157. Likewise, that a term of suspension will disrupt the respondent's solo practice cannot influence our decision, as "[w]e cannot sensibly have or apply a rule which excuses solo practitioners from warranted discipline while imposing the same discipline on others who happen to be engaged in group practice." *Matter of Driscoll*, 410 Mass. 695, 704 (1991) (Greaney, J., dissenting). In short, the respondent has not presented any special mitigating circumstances to alter our conclusion.

*Conclusion.* The order of the single justice suspending the respondent from the practice of law for one year is affirmed.

*So ordered.*