IN THE MATTER OF TERRANCE J. MCCARTHY.

Suffolk. September 8, 1993. - November 16, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Suspension, Deceit, Canons of
   ethics.

An attorney who elicited false testimony, introduced in evidence false doc-
   uments, and failed to correct the record when he had an opportunity to
   do so, perpetrated a fraud on the tribunal (a rent control board) before
   which he appeared: in the absence of any mitigating factors, the appro-
   priate minimum sanction for such conduct is suspension from the prac-
   tice of law for one year. [428-432]

INFORMATION filed in the Supreme Judicial Court for the
county of Suffolk on December 3, 1992.

The case was heard by *Nolan*, J.

*Jane R. Rabe*, Assistant Bar Counsel.

*Martin E. Mason* (*Terrance J. McCarthy* with him) for
the respondent.

ABRAMS, J. At issue is the appropriate sanction to be im-
posed on an attorney who elicited false testimony and offered
false documents in a proceeding before the Cambridge rent
control board (rent control board). The single justice ordered
that the respondent be publicly censured. Bar counsel ap-
peals. We conclude that the respondent should be suspended
from the practice of law for a period of one year.

1. *The facts.* Bar counsel commenced formal disciplinary
proceedings against the respondent by filing a petition for
discipline. The petition alleged that the respondent elicited
false, sworn testimony from his client; submitted in evidence
false documents; and failed to correct the record at an evic-
tion hearing before the rent control board when he had an
opportunity to do so. The respondent denied the alleged dis-

ciplinary violations. Subsequently, the respondent stipulated to the facts asserted in the petition, but continued to deny the disciplinary rule violations alleged therein. A panel of the Board of Bar Overseers (board) held hearings on the violations alleged in the petition for discipline. At the close of the hearing, bar counsel recommended that the respondent be suspended from the practice of law for six months. The respondent asked that the sanction be either a private reprimand or a public censure.

The hearing panel found as follows. The respondent represented Esmeralda Medeiros (Esmeralda) in a dispute with her brother, John Medeiros (John), over a two-family dwelling which they jointly owned and occupied in Arlington (Arlington property). John retained counsel and, through him, offered to purchase Esmeralda's interest in the Arlington property. During the course of the dispute, both parties threatened as a last resort to file a petition to partition the Arlington property. On the evening of November 28, 1989, the respondent met with Esmeralda and her sister, Marie Medeiros (Marie), to discuss John's offer. Esmeralda instructed the respondent to make a counteroffer and to prepare and file a petition to partition the Arlington property. The respondent drafted a petition to partition the Arlington property and a notice of filing declaring that the petition had been filed on November 28, 1989. The respondent directed Esmeralda to execute the forms. The respondent never filed the petition or the affidavit.

That same evening, Esmeralda and Marie retained the respondent to represent them in an eviction hearing pending before the rent control board. Esmeralda and Marie had applied to the rent control board for a certificate to evict their tenant (John's brother-in-law) from their jointly-owned property on Elm Street in Cambridge. One of the grounds for their application was their claim that they needed the apartment for themselves due to "family problems."

On December 7, 1989, the respondent appeared before the rent control board for a hearing on his clients' eviction application. Because his clients sought to justify the eviction on

the ground that they needed the apartment for themselves, the respondent elicited testimony from Esmeralda that Marie would have to leave her apartment on Norfolk Street, which Marie owned with John and others, due to a dispute with John. Referring to the Norfolk Street property, the respondent asked Esmeralda, "Is there currently pending a petition to partition that property?" Esmeralda answered, "That's correct." The respondent knew when he asked the question and elicited the answer that he had not drafted, much less filed, a petition to partition the Norfolk Street property. The respondent also elicited testimony from Esmeralda that the Arlington property was "being partitioned through the court." The respondent knew that he had not filed the partition petition which he had drafted concerning the Arlington property.

When John testified on behalf of his brother-in-law at the hearing, the respondent showed him a copy of the unfiled petition to partition the Arlington property and asked him to identify it as a petition filed with the court. Following an objection by the tenant, the respondent introduced the petition in evidence to impeach John's testimony and as evidence that the partition petition on the Arlington property had been filed with the court.[1]

---

[1] When John testified on behalf of his brother-in-law at the hearing, the respondent cross-examined him as follows.

RESPONDENT:            "And you are aware, are you not, that your sister, Esmeralda Medeiros, has filed a Petition to Partition the real estate situated at 3-3A Paul Revere Road, Arlington, is that correct?"

JOHN MEDEIROS:        "No, I am not, Sir, I have not received any letters as far as from you sir or my lawyer stating that's a fact."

RESPONDENT:            "You haven't?"

With respect to the Norfolk Street property, the respondent then cross-examined John as follows.

RESPONDENT:            "And you are aware, are you not, that your sister, Marie, has filed a petition to partition the real estate where she is currently residing?"

JOHN MEDEIROS:        "No, I'm not, sir. That's the first time I'm hearing of

At the close of the hearing, the rent control board hearing officer granted the parties an extension of time to file written statements and additional exhibits. A few days later, the respondent's clients sent a letter to the rent control board hearing officer which pointed out that the "Petition to Partition the properties" which had been presented to him was "not irrelevant" to their request for the eviction because "[t]his is precisely what is causing us to need the apartment." The clients' letter indicated that they mailed the respondent a copy of the letter. The letter became part of the record. The respondent received notice of this fact when the hearing officer sent him a copy of the letter. The respondent took no steps to correct the record before the rent control board to reflect the fact that neither he nor his clients had filed a petition to partition any property. The tenant vacated the premises and the eviction proceeding was dismissed.

The hearing panel found that the respondent elicited sworn testimony purporting to prove that two petitions to partition were filed in court when he knew that this was not so, thereby violating Rule 3:07, Canon 1, DR 1-102 (A) (4) and (5), as appearing in 382 Mass. 769 (1981) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit and misrepresentation, or in conduct that is prejudicial to the administration of justice), and Canon 7, DR 7-102 (A) (4) and (5), as appearing in 382 Mass. 784 (1981) (in his representation of a client, a lawyer shall not knowingly use perjured testimony or false evidence or knowingly make a false statement of law or fact).

---

|  | this." |
| RESPONDENT: | "And isn't it fair to say that all the properties that you currently own, where your sisters have an interest, are now in the process of being decided by the courts pursuant to a petition to partition the real estate?" |
| JOHN MEDEIROS: | "As I said, sir, I don't know. You told me the first time today that's what was presented in this process, which surprised me. And it's the first time I'm hearing that." |

The hearing panel also found that the respondent offered documents in evidence purporting to be a filed petition to partition and a certified affidavit of filing when he knew that he had not filed the petition or the affidavit and that he failed to correct the record to show that he had not filed the petition or the affidavit when he had an opportunity to do so. The respondent's conduct therefore violated Canon 1, DR 1-102 (A) (4) and (5), and Canon 7, DR 7-102 (A) (4).

Finally, the hearing panel determined that, in cross-examining John, the respondent falsely asserted that he had filed the petition to partition, thereby violating Canon 7, DR 7-106 (C) (1) (in appearing in his professional capacity before a tribunal, a lawyer shall not state or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence). The hearing panel noted that respondent had a history of prior discipline.[2]

The hearing panel recommended that the respondent be disciplined by public censure and that he be required to take and pass the Multi-State Professional Responsibility Examination. As grounds for not imposing a harsher sanction on the respondent, the hearing panel noted that the respondent: (1) cooperated with the board and acknowledged most of the essential facts; (2) had no preconceived plan to misrepresent; (3) engaged in no long-standing wrongful conduct; and (4) caused no financial losses to the public or to the complainant because the tenant vacated the apartment before the rent control board issued its decision. The hearing panel also cited the respondent's status as a sole practitioner in making its recommendation for public censure.

---

[2]The respondent had received an informal admonition in 1985 for threatening to report an adverse party and his family to the Internal Revenue Service unless the family agreed to a settlement in a civil suit, in violation of Canon 7, DR 7-105, as appearing in 382 Mass. 786 (1981). In 1989, the respondent had received a private reprimand for neglect of his client's divorce modification proceedings, in violation of Canon 6, DR 6-101 (A) (3), as appearing in 382 Mass. 783 (1981), and failure to represent his client zealously, in violation of Canon 7, DR 7-101 (A) (1), (2), and (3), as appearing in 382 Mass. 784 (1981).

Bar counsel appealed the hearing panel's recommendation for discipline and asked the board to recommend that the respondent be suspended from the practice of law for not less than six months. The board adopted the reasoning and conclusions of its hearing panel. The board determined that the respondent's misconduct constituted an attempt to perpetrate a fraud on a tribunal. The board rejected the sanction imposed by the hearing panel and instead filed an information with this court recommending that the respondent be suspended from the practice of law for six months. An information was filed with the court on December 3, 1992. After hearing, a single justice ordered that the respondent be publicly censured.

2. *The applicable standard for evaluating an appeal from a sanction imposed by a single justice.* In reviewing an appeal from a sanction imposed by a single justice, the appropriate inquiry for the court is whether the sanction is " 'markedly disparate' from the judgments in comparable cases." *Matter of Neitlich*, 413 Mass. 416, 421 (1992). *Matter of Palmer*, 413 Mass. 33, 37-38 (1992). *Matter of Saab*, 406 Mass. 315, 325 (1989). *Matter of Alter*, 389 Mass. 153, 156 (1983).

A. *Comparable cases.* In *Neitlich, supra,* we considered the appropriate sanction for a lawyer who had "perpetrate[d] a fraud on the [probate] court and opposing counsel" by actively misrepresenting the terms of his client's pending real estate transaction. *Id.* at 422. We determined that a one-year suspension was appropriate, noting that "a one-year suspension is consistent with the discipline imposed in *Matter of Grossman*, 3 Mass. Att'y Discipline Rep. 89 (1983)," the case we concluded was the "most closely analogous to the respondent's case." *Neitlich, supra* at 423-424.

The hearing panel relied on *Matter of Parkhurst*, 7 Mass. Att'y Discipline Rep. 232 (1991), to justify its recommendation. In *Parkhurst, supra,* the lawyer introduced in evidence an amended tax return that he planned to file on his client's behalf without clarifying for the rent control board that he had not yet filed the return. He then failed to correct the

record when his client told him after the hearing not to file the amended return. Parkhurst had no record of prior discipline.

At the time that the hearing panel made its recommendation, *Neitlich* had not been decided. Because *Parkhurst* was decided by a single justice prior to our decision in *Neitlich*, *Parkhurst* has limited precedential value. "If, as in this case, the full court has spoken definitively on a subject, the opinions of individual Justices of this court are not appropriate precedent." *Matter of Bryan*, 411 Mass. 288, 291 n.4 (1991). "Individual Justice[s'] opinions are not suitable precedent where there exists an opinion of the full court that speaks fully to the matter and was intended to lay it to rest." *Matter of Driscoll*, 410 Mass. 695, 705 (1991) (Greaney, J., dissenting). *Neitlich*, therefore, is the standard.

B. *Mitigating factors.* There are no substantial mitigating factors present in the instant case which would justify departing from the sanction imposed in *Neitlich.* The board considered the panel's reasoning. The first factor that the panel considered in mitigation was the respondent's cooperation with the board and his stipulation to the facts stated in the bar counsel's petition for discipline. Cooperation with the disciplinary process is a "typical" mitigating factor which does not ordinarily justify departure from the usual sanction. See *Alter, supra* at 156; *Saab, supra* at 327 (" 'typical' mitigating evidence" is not entitled to "substantial weight" in determining the level of discipline).

The second factor which the panel relied on was that the respondent did not, prior to the rent control board hearing, formulate a plan to elicit false statements or to introduce false evidence.[3] Part of the reason that the respondent had no

---

[3]The board, in considering the hearing panel's report, noted that "this point has some force but not much." The board noted that the hearing panel determined that the respondent "got caught up in the welter of a heated and chaotic hearing . . . ." The board also noted that "it is equally clear that at some point the respondent did make a conscious and deliberate decision to defraud the hearing officer and thereby to subvert the adjudicatory process. Whether that point occurred during the hearing or so far in advance as to give his decision the character of a 'preconceived

"preconceived plan to misrepresent" was that the respondent appeared on December 7, 1989, "without preparation." Failure to prepare a client's case is not a mitigating factor.

The third factor which the panel deemed mitigating, that the respondent committed an isolated act of misconduct, was simply erroneous. The panel relied on *Matter of Tully*, 5 Mass. Att'y Discipline Rep. 373, 377 (1986). That case, however, is distinguishable. In *Tully, supra*, a public censure for two counts of neglect and misrepresentation to clients was deemed appropriate because these were isolated instances in an otherwise "unblemished" twenty-five year career. By contrast, the respondent's legal career contains other instances of discipline. See note 2, *supra*. The consideration of a lawyer's prior disciplinary record is "essential in determining the appropriate level of discipline to be imposed in any case." *Saab, supra* at 327.

The fourth factor which the panel found to be mitigating was the lack of harm caused by the respondent's conduct. The harm, however, was avoided because the tenant vacated the premises before the rent control board decided the issue. The tenant's action does not mitigate the respondent's culpability. Moreover, by submitting false documents to the rent control board hearing officer, the respondent attempted to subvert a public agency's process of adjudication.[4]

The final factor which the panel considered to be mitigating was that the impact of a suspension on the respondent's law practice would be greater because he is a sole practitioner. In *Neitlich, supra*, we rejected the argument that a sanction should be lessened because "a term of suspension will disrupt the respondent's solo practice," holding that "[w]e cannot sensibly have or apply a rule which excuses

plan' does not go far in mitigating his misconduct." We agree with the board. The pressure of litigation is an insufficient justification for the respondent's conduct. See *Neitlich, supra*; *Grossman, supra*.

[4]The rent control board hearing officer testified that, by necessity, the rent control board does not require authentication of documentary evidence. The rent control board relies on the integrity of the parties who appear before it.

solo practitioners from warranted discipline while imposing the same discipline on others who happen to be engaged in group practice." *Neitlich, supra* at 425, citing *Matter of Driscoll*, 410 Mass. 695, 704 (1991) (Greaney, J., dissenting). The test of an appropriate level of discipline must lie with considerations of the public welfare, not with the impact of the sanction on the individual lawyer. *Matter of Keenan*, 314 Mass. 544, 547 (1943). When there is a conflict between the interests of the individual attorney and the interests of the public, the individual's concerns must give way. *Id.*

3. *The appropriate sanction.* By eliciting false testimony, introducing in evidence false documents, and failing to correct the record when he had the opportunity to do so, the respondent perpetrated a fraud on a tribunal. An effective judicial system depends on the honesty and integrity of the lawyers who appear before its tribunals. *Matter of Mahlowitz*, 1 Mass. Att'y Discipline Rep. 189, 194 (1979). See *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (fraud on the court is "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"). As "an officer of the court, an attorney . . . is bound to uphold the integrity of [our system of justice] by being truthful to the court and opposing counsel." *Neitlich, supra* at 423. A violation of that obligation warrants and requires meaningful sanction. Absent substantial mitigating factors, none of which was present in this case, the minimum sanction for such conduct is a one-year suspension from the practice of law. *Neitlich, supra* at 423.

The respondent argues that he should not be held to the "new, tougher" standard of *Neitlich*. As we noted in *Neitlich*, the one-year suspension is consistent with the discipline imposed in *Matter of Grossman*, 3 Mass. Att'y Discipline Rep. 89 (1983). Moreover, "the ABA Standards for Imposing Lawyer Sanctions recommend the even more serious sanction of disbarment where an attorney, with intent to deceive a court, makes a false statement or 'improperly with-

holds material information.' " *Neitlich, supra* at 423, quoting ABA Standards for Imposing Lawyer Sanctions § 6.11 (1986). In short, this case is governed by *Neitlich.* Any other sanction would be "markedly disparate." See *Alter, supra* at 156. "[T]he respondent has not presented any special mitigating circumstances to alter our conclusion." *Neitlich, supra* at 425.

We vacate the order of the single justice imposing a public censure on the respondent and remand this matter to the Supreme Judicial Court for the county of Suffolk where a judgment shall be entered suspending the respondent from the practice of law for a period of one year.

*So ordered.*