IN THE MATTER OF DONALD DEAN CARNAHAN. April 26, 2007. *Supreme Judicial Court,* Appeal from order of single justice. *Attorney at Law,* Disciplinary proceeding, Conflict of interest, Public reprimand. *Conflict of Interest.*

Bar counsel appeals from a judgment of a single justice of this court ordering the respondent, attorney Donald Dean Carnahan, be publicly reprimanded. We affirm.

*Background.* Bar counsel filed with the Board of Bar Overseers (board) a petition for discipline alleging that Carnahan improperly undertook the representation of an elderly hospitalized client while already representing another client with conflicting financial interests; that Carnahan refused to withdraw and return the new client's case file when a guardian was appointed and demanded that the files be returned; and that Carnahan improperly used the new client's confidential information. A hearing committee found that Carnahan had violated a number of the Massachusetts Rules of Professional Conduct, including Mass. R. Prof. C. 1.4 (b), 426 Mass. 1314 (1998); Mass. R. Prof. C. 1.7 (a), (b), 426 Mass. 1330 (1998); and Mass. R. Prof. C. 1.9 (a), (c), 426 Mass. 1342 (1998). After the committee recommended that Carnahan receive a public reprimand, the parties filed cross appeals to the board. The

board adopted the committee's findings of fact and conclusions of law, with certain revisions, and adopted, by a seven to four vote, the committee's recommendation of a public reprimand with the added condition that Carnahan take and pass the multistate professional responsibility examination within one year. Bar counsel objected to the sanction and requested the filing of an information. The information was heard by the single justice who ordered a public reprimand.[1] Bar counsel appeals, arguing that a public reprimand is an insufficient sanction and that Carnahan's misconduct warrants a suspension.

*Discussion.* "On appeal, we review de novo the sanction ordered by the single justice, but we give deference to the board's recommendation." *Matter of Hoicka,* 442 Mass. 1004, 1006 (2004), citing *Matter of Otis,* 438 Mass. 1016, 1017 (2003). "[I]n reviewing any disciplinary decision . . . [we] inquire whether the judgment is markedly disparate from those ordinarily entered by the various single justices in similar cases." *Matter of Alter,* 389 Mass. 153, 156 (1983).

In arguing for suspension, bar counsel suggests that Carnahan's misconduct is akin to that of the attorneys in *Matter of Lupo,* 447 Mass. 345 (2006); *Matter of Wise,* 433 Mass. 80 (2000); and *Matter of Pike,* 408 Mass. 740 (1990). We do not agree. Lupo was suspended indefinitely after conduct that involved personal conflicts of interest with elderly, unsophisticated, and vulnerable clients. *Matter of Lupo, supra* at 345-346. Lupo represented five elderly sisters as both lawyer and real estate broker. *Id.* at 346. He also provided legal and estate planning services to an elderly aunt that included his purchase of her house for less than what he knew to be the house's fair market value. *Id.* at 349-350. The court assessed his conduct as "far more egregious than conflicted representation. His conflicted conduct is characterized less by a divided loyalty and more by a motivation to subjugate the interests of his clients to his own." *Id.* at 360. The attorneys in the *Wise* and *Pike* cases also engaged in conflicted representation that led to suspensions. *Matter of Wise, supra* at 92 (six-month suspension for attorney whose actions were marked by conflict of interest, "vengeful attitude" and "selfish motive"); *Matter of Pike, supra* at 745 (six-month suspension where attorney could not adequately represent both sides of real estate transaction, had a "direct financial interest" and "acted deliberately for his own benefit and in disregard of his client's interests").

Here, Carnahan was asked by an existing client, Paul Giragosian, if he would be interested in representing an elderly friend of Giragosian, Frank Constantino, who had been hospitalized as a result of an automobile accident. Carnahan knew, prior to meeting with Constantino, that Constantino had already engaged an attorney to represent him in a personal injury action commenced as a result of the accident; that Giragosian had received money from Constantino over the years and that Giragosian thought that Constantino's wife might bring an action against him[2]; and that Giragosian, during a visit to Constantino at the hospital, had Constantino sign a document purporting to revoke a power of attorney that Constantino had given to his wife and order-

---

[1]Carnahan has since passed the multistate professional responsibility examination.

[2]The hearing committee concluded that once Carnahan learned this information, he was on notice that there was at least a potential conflict in representing both Giragosian and Constantino because they were potentially debtor and creditor. The board, in turn, in summarizing the hearing committee's findings of fact, stated that Giragosian told Carnahan that Constantino had "advanced" money to Giragosian over the years and that Giragosian thought that Constantino's wife might bring an action against him.

ing the cessation of any collection efforts against Giragosian. During Carnahan's meetings with Constantino, for most of which Giragosian was present, Constantino indicated that he wanted to revoke the power of attorney that he had given to his wife and grant that power to Giragosian. Carnahan therefore prepared, and Constantino executed, a power of attorney to Giragosian that authorized Giragosian to forgive debts to Constantino. Additionally, during the course of Carnahan's brief representation of Constantino, who died a few months after the accident, he had Constantino sign a contingency fee agreement for Carnahan's work on the personal injury action.

At no time did Carnahan explain any potential conflicts to Constantino. Despite this failure and what the board found to be obvious conflicts,[3] Carnahan appears to have been doing what he thought Constantino wanted. Carnahan's desire to earn a contingency fee does not necessarily equate with the selfish motive or self-interest of the attorneys in the other cited cases and was, as the board noted, "consonant with pursuit of recovery for Mr. Constantino."

This case is more like those cited by the board and the single justice where attorneys who engaged in conflicted representation received public reprimands. See *Matter of Manelis*, 18 Mass. Att'y Discipline Rep. 375 (2002) (attorney drafted new will for father at request of beneficiary son without discussing matter separately with father and without conducting reasonable investigation into father's competency); *Matter of Reynolds*, 15 Mass. Att'y Discipline Rep. 497 (1999) (attorney drafted estate planning documents benefiting live-in caregivers of elderly woman without inquiring about the parties' relationship and knowing that documents represented fundamental change in estate plan detrimental to family members); *Matter of Epstein*, 7 Mass. Att'y Discipline Rep. 93 (1991) (attorney prepared will for father-in-law's seventy-two year old sister benefiting father-in-law where attorney knew or should have known that sister was not competent to execute will).[4]

Carnahan's actions do not warrant suspension, a sanction that in conflict cases "has been reserved for conduct involving self-dealing . . . or egregious conflicts causing substantial injury to clients or innocent third parties." *Admonition No. 02-13*, 18 Mass. Att'y Discipline Rep. 640, 655 (2002), and cases cited.

*Judgment affirmed.*

*Sarah A. Chambers*, Assistant Bar Counsel.
*Michael B. Roitman* for the respondent.

---

[3]The board did not, and did not need to, specifically determine when the conflict arose. As the board stated, there was no dispute that a conflict arose at some point.

[4]Bar counsel also urges that because these cases were decided prior to *Matter of Lupo*, 447 Mass. 345 (2006), they are of limited precedential value. The argument is that the *Lupo* decision, a full court opinion, laid to rest a matter that previously had been addressed in these single justice opinions. The conduct there, however, differed, significantly, from the conduct in these cases and nothing in *Matter of Lupo*, *supra*, suggests that the cases have lost their precedential value.