NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12132


IN THE MATTER OF BARRY D. GREENE.


May 31, 2017.


Attorney at Law, Disciplinary proceeding, Suspension.


The respondent attorney, Barry D. Greene, appeals from the order of a single justice of this court suspending him from the practice of law for two years.[1]  We affirm.

Background.  Bar counsel filed a petition for discipline, which was twice amended, with the Board of Bar Overseers (board) against the respondent arising out of his participation in seven residential mortgage foreclosure "rescue transactions" during 2005 and 2006.  At the time, the respondent worked with his son, attorney Evan A. Greene, at a law firm specializing in real estate transactions.[2]  See Matter of Greene, 476 Mass. 1006 (2016).  We previously described those transactions, and do not repeat that discussion here.[3]  Id.

---

[1] This bar discipline appeal is subject to S.J.C. Rule 2:23 (b), 471 Mass. 1303 (2015).  Pursuant to the rule, we dispense with oral argument, and decide the case on the basis of the materials filed by the respondent.

[2] Evan A. Greene was the subject of separate bar disciplinary proceedings.  See Matter of Greene, 476 Mass. 1006 (2016).  We concluded in that case that an indefinite suspension was appropriate, based in part on twelve criminal convictions that are not here at issue.

[3] We acknowledge the respondent's argument concerning the fact that the same assistant board counsel assisted the board's hearing committee at the disciplinary hearings conducted for him

After a hearing, a hearing committee of the board concluded that the respondent made misrepresentations on mortgage applications in three matters, and falsely certified the accuracy of incomplete and misleading HUD-1 closing statements in four matters, in violation of Mass. R. Prof. C. 1.4 (a) and (b), 426 Mass. 1314 (1998); and Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998). In addition, the hearing committee concluded that by inducing an associate attorney to falsely certify the accuracy of HUD-1 closing statements, the respondent violated Mass. R. Prof. C. 8.4 (a), 426 Mass. 1429 (1998); and he directly or indirectly caused false documents to be delivered to his lender clients and failed to notify the lenders of the leases and option agreements, in violation of Mass. R. Prof. C. 1.4 (a) and (b), and Mass. R. Prof. C. 8.4 (a) and (c). The hearing committee also concluded that, by placing his own interests ahead of his lender clients' interests, and by assigning associate attorneys to close transactions affected by his own or his son's conflicts of interest, the respondent violated Mass. R. Prof. C. 1.7 (b), as amended, 430 Mass. 1301 (1999), and Mass. R. Prof. C. 8.4 (a). In addition, the hearing committee concluded that the respondent's withholding of relevant information from one client and his failure to follow the client's closing instructions violated Mass. R. Prof. C. 1.1, 426 Mass. 1308 (1998); Mass. R. Prof. C. 1.2 (a), 426 Mass. 1310 (1998); and Mass. R. Prof. C. 1.3, 426 Mass. 1313 (1998). The hearing committee also determined that the respondent violated Mass. R. Prof. C. 8.4 (c) by "exploit[ing], through dishonest and deceitful means, vulnerable and uninformed individuals who were desperate to save their homes." Finally, the hearing committee found that, by commingling personal and trust funds, the respondent violated Mass. R. Prof. C. 1.15 (b), as appearing in 440 Mass. 1338 (2004).

The hearing committee declined to weigh in mitigation of sanction payments made in settlement of threatened litigation, the absence of prior discipline over a substantial legal career,

---

and the separate disciplinary proceedings involving his son. The board found that the respondent waived any objection by failing to raise it before the hearing committee. Moreover, the respondent has not identified any evidence suggesting that assistant board counsel's presence influenced the hearing committee or prejudiced the respondent in any way, and he does not contend that the hearing committee's findings, which were adopted by the board, are not supported by substantial evidence. We do not address this argument further.

and the absence of harm to his own lender clients.  It weighed
in aggravation its finding that the respondent's conduct was
motivated by pecuniary gain at the expense of vulnerable and
unsophisticated individuals, and the breadth and scope of the
transactions.  It recommended that the respondent be suspended
from the practice of law for two years.  The board adopted the
hearing committee's report and recommendation, and filed a
corresponding information in the county court pursuant to S.J.C.
Rule 4:01, § 8 (6), as appearing in 453 Mass. 1310 (2009).  The
single justice ordered that the respondent be suspended for two
years.  The respondent appeals to the full court, arguing that
the sanction is too harsh.[4]

Discussion.  Because the respondent does not contest the
misconduct, the only issue before us is whether the sanction
imposed by the single justice "is markedly disparate from those
ordinarily entered by the various single justices in similar
cases."  Matter of Alter, 389 Mass. 153, 156 (1983).  Where, as
here, an attorney's misconduct spans multiple false HUD-1
closing statements, the sanctions imposed generally have ranged
between eighteen months and two years.  See Matter of Alberino,
27 Mass. Att'y Discipline Rep. 1 (2011) (stipulation to
eighteen-month suspension for conduct involving three false HUD-
1 documents, with aggravating and mitigating factors);; Matter
of Foley, 26 Mass. Att'y Discipline Rep. 199, 201-202 (2010)
(eighteen-month suspension for false HUD-1 documents in twenty-
four closings that were part of one large transaction in single
day); Matter of Coppo, 26 Mass. Att'y Discipline Rep. 113 (2010)
(stipulation to eighteen-month suspension, for preparation of
three false HUD-1 documents and conflict of interest); Matter of
Marks, 23 Mass. Att'y Discipline Rep. 438 442 (2007)
(stipulation to two-year suspension for misconduct in four
transactions).  In this case, the respondent's misconduct
additionally involved multiple conflicts of interest motivated
by self-interest or selfish motive.  See, e.g., Matter of Pike,
408 Mass. 740, 745 (1990) (six-month suspension for attorney who
had "direct financial interest" in transaction, with resulting
prejudice to client); Matter of Tobin, 7 Mass. Att'y Discipline
Rep. 290, 294-295 (1991) (one-year suspension for "glaring"
conflict of interest involving assisting client to perpetuate
fraud and take advantage of unsophisticated homeowner).  We
consider the misconduct in this case to be more egregious than

---

[4] Although the respondent appeared and argued at a hearing
before the single justice, he did not file a brief.  We do not
consider on appeal issues or arguments that were not raised
before the single justice.

in Matter of Foley, supra, because multiple transactions were involved over a substantial period of time, the transactions gave rise to conflicts of interest motivated by pecuniary self-interest, the respondent "was an investor in the transactions[,] and . . . the misrepresentations were made to his firm's clients." Matter of Greene, 476 Mass. at 1009 ("Had the HUD-1 violations been the only basis for discipline, we would be satisfied that a two-year suspension is not markedly disparate from the sanctions imposed in comparable cases"). In addition, the board found that he commingled personal funds with client trust funds. In the circumstances, the single justice's determination that a two-year suspension is appropriate is not markedly disparate from the sanctions imposed in comparable cases.

Like the single justice, the board, and the hearing committee, we have considered the factors proposed in mitigation or aggravation of sanction. We agree that the respondent's age and the absence of prior discipline are "typical" mitigating circumstances that do not weigh in mitigation of sanction. See Matter of Alter, 389 Mass. at 157. Likewise, although the respondent may have obtained favorable results for the one homeowner who exercised the repurchase option, that is, as the single justice concluded, an "ordinary result expected of a reasonably competent attorney," not a factor to be considered in mitigation. Finally, making payments in settlement of threatened litigation after the commencement of these disciplinary proceedings neither evidences remorse nor, in these circumstances, factors into determining the appropriate sanction. See Matter of LiBassi, 449 Mass. 1014, 1017 (2007) ("Recovery obtained through court action 'is not "restitution" for purposes of choosing an appropriate sanction'" [citation omitted]).

Conclusion. The primary factor in attorney discipline is "the effect upon, and perception of, the public and the bar." Matter of Kerlinsky, 428 Mass. 656, 664, cert. denied, 526 U.S. 1160 (1999), quoting Matter of Finnerty, 418 Mass. 821, 829 (1994). In this case, the respondent used his considerable experience in the practice of law to implement a series of transactions designed to take advantage of vulnerable homeowners in precarious financial positions, concealed the nature of the transactions from his lender clients out of a self-interested motive, and engaged in multiple conflicts of interest. Giving "substantial deference to the board's recommendation," Matter of Foley, 439 Mass. 324, 333 (2003), we conclude that a two-year

suspension from the practice of law is warranted.  The order of the single justice is therefore affirmed.

<u>So ordered</u>.


The case was submitted on the papers filed, accompanied by a memorandum of law.

<u>Barry D. Greene</u>, pro se.