IN THE MATTER OF THOMAS E. FINNERTY.

Suffolk. March 10, 1994. - November 15, 1994.

Present: LIACOS, C.J., ABRAMS, O'CONNOR, & GREANEY, JJ.[1]

*Attorney at Law*, Disciplinary proceeding, Suspension.

An attorney who, in the course of his own divorce proceeding, intentionally
misrepresented his financial worth to the court as several hundred thou-
sand dollars less than he knew it to be violated Canon 1, DR 1-102 (A)
(4), (5), and (6) [828-829]; the appropriate sanction in the circum-
stances was a six-month suspension from the practice of law [829-830].

INFORMATION filed in the Supreme Judicial Court for the
county of Suffolk on June 16, 1993.

The case was heard by *Lynch*, J.

· *Arnold R. Rosenfeld*, Bar Counsel.

*Richard M. Egbert* (*Maryellen Kelleher* with him) for the
respondent.

O'CONNOR, J. This is a bar discipline case. Following a
hearing before the Board of Bar Overseers pursuant to Su-
preme Judicial Court Rule 4:01, § 8, as amended, 415 Mass.
1304 (1993), the hearing committee made the following find-
ings. The respondent, Thomas E. Finnerty, was admitted to
the Massachusetts bar on November 17, 1960. He estab-
lished his own practice as a professional corporation in 1980
and has continued since then as the sole practitioner of the
corporation. In 1984, the professional corporation was
changed to a Subchapter S corporation. In the spring or
summer of 1983, Harold Brown, a real estate developer, en-
gaged Finnerty to represent him in his efforts to become the
developer of a real estate parcel which became known as 75

---

[1]Justice Nolan, who was on the panel hearing this case, has recused
himself.

State Street. In return for Finnerty's provision of legal services, he was given as compensation a limited partnership interest in the development. Also during 1983, Finnerty acquired a partnership interest in a real estate joint venture known as the Harbor Point Project.

In January, 1984, Finnerty filed for divorce from Barbara M. Finnerty, to whom he had been married for twenty-eight years, in the Plymouth County Probate and Family Court. The divorce was bitter. Finnerty was represented by counsel throughout the divorce proceedings. In connection with the proceedings, Finnerty filed several financial statements in the court. In discussions with his attorney regarding the preparation of those statements, Finnerty did not inform counsel of his interests in 75 State Street or the Harbor Point Project. Finnerty made no mention of those interests in any of the filed financial statements. He did, however, identify his interest in his law firm, Thomas E. Finnerty, P.C., as a business asset in all the financial statements he filed with the court. Finnerty also filed answers and supplemental answers to interrogatories propounded by Mrs. Finnerty, in which he did not disclose that he had interests in 75 State Street or the Harbor Point Project although he did disclose his interest in his law firm.

In November, 1984, Mrs. Finnerty obtained permission from the court to have a certified public accountant audit Thomas E. Finnerty, P.C., the law firm, in order to obtain a market valuation of the practice. Thereafter, Finnerty made the law firm's financial books and all the case files available to the accountant hired by Mrs. Finnerty's attorney. The accountant was not denied access to any documents he wanted to review. The documents concerning 75 State Street and the Harbor Point Project were among the files made available to the accountant, as were "between 200 and 500 active tort files, worth several hundred thousand dollars." The accountant did not look at any case files to ascertain the value of contingency fees or other fee expectancies connected with the law firm's practice. This was because the accountant's "understanding of his task was that he was performing an audit

to ascertain if [Finnerty's] Financial Statements were accurate. . . . [The accountant] did not understand his task to include valuing the law practice. . . . [He] understood that to value [Finnerty's] law practice, he would have had to value the files and determine the amounts earned to the date of review, and the value of contingency fees, as well as future fees. . . . [He] did not do such valuations in this case because Mrs. Finnerty's attorney, who was directing him, did not tell him to do so, and because he was not qualified to do so."

"On March 7, 1985, [the accountant] produced a Financial Statement for the corporation for the year ending October 31, 1984, showing retained earnings of approximately $24,000. . . . [The accountant's] cover letter, dated March 7, 1985, qualified his conclusion as to value as follows: '[T]he accompanying financial statements are not intended to represent financial positions and results of operations in conformity with generally accepted accounting principles.' The cover letter referred to Note 1 to the Financial Statement, which noted that the statement was presented on the cash basis of accounting."

Finnerty's counsel was given a copy of the accountant's report and, thinking that it was an appraisal of the law firm's worth, he thought it was too low. Counsel's opinion was based on the accountant's failure to include residual values of any of the contingent fee cases and his failure to account for an area of expertise that would affect the value of the practice. However, Mrs. Finnerty's attorney asked Finnerty's attorney to stipulate that the value of the Thomas E. Finnerty, P.C., law firm was $24,000, and the parties so stipulated on March 14, 1985. That stipulation was communicated to the Probate and Family Court by Finnerty's detailed financial statement on a regular court form, dated March 8, 1985, and filed on March 14, to which several schedules were attached, including a two page "[s]chedule of [m]arital [a]ssets." One of the listed items was the following:

"B. Business Interest - Thomas E. Finnerty, P.C.

Husband's professional corporation (Law practice)
Subtotal: $24,000.00 stipulated value."

In February, 1985, approximately one month before the
March 14 financial statement was filed informing the court,
among other things, that the agreed value of the law practice
was $24,000, Finnerty had entered into a written agreement
with Harold Brown whereby Brown purchased Finnerty's
share in 75 State Street for $500,000 plus an additional
amount to be determined by the final size of that building.
On March 28, 1985, two weeks after Finnerty's financial
statement had been filed, Finnerty's counsel filed a memo-
randum in support of his request that certain orders be incor-
porated in the judgment nisi in which counsel set forth Fin-
nerty's financial position including a law practice having a
value of $24,000. That memorandum made no reference to
Finnerty's anticipated receipt of $500,000 or more from the
sale of the interest in 75 State Street nor did it mention any
interest in the Harbor Point Project.

In April, 1985, a judge issued a judgment of divorce nisi,
nunc pro tunc as of March 15, 1985, which included a distri-
bution of property that did not take into account Finnerty's
anticipated receipt of $500,000 or more, or the Harbor Point
Project. In July, 1985, Brown paid Finnerty $500,000 by two
checks which were made payable to the St. Botolph Realty
Trust as the designee under Finnerty's agreement with
Brown. The St. Botolph Realty Trust was created by Fin-
nerty on July 19, 1985, and he was the sole trustee and
beneficiary.

Lastly, the hearing committee found that "[i]n the tax re-
turns filed for the fiscal years 1984 and 1985 for the law firm
of Thomas Finnerty, P.C., [Finnerty] did not report the
$500,000 received [from] Harold Brown as income to his
professional corporation. . . . In his personal tax returns for
the year 1985, [Finnerty] reported the $500,000 as a long
term capital gain."

The hearing committee identified the "critical issue" as
"whether at the relevant time, [Finnerty] believed that his

interest in 75 State Street and the Harbor Point Project belonged [to] him or to his law firm" and then found that "in the spring of 1985, [Finnerty] believed that he personally had property interests in both 75 State Street and the Harbor Point Project as of December 31, 1983, [and that,] as of February 20, 1985, [Finnerty] had a financial agreement then worth at least $500,000 for his property interest in 75 State Street." Under the heading "Ultimate Findings and Conclusions of Law," the hearing committee states the following: "[Finnerty] was familiar with the reporting requirements for financial statements, answers to interrogatories, and production of documents from his own experience as a lawyer representing clients in divorce proceedings and from the advice he received from his own counsel in his divorce proceedings.

"[Finnerty] deliberately did not inform his divorce attorney of his property interests in either 75 State Street or the Harbor Point Project to conceal those interests from him. . . . When [Finnerty] filed his Financial Memorandum, he knew that the Court would rely on this memorandum in its determination as to the allocation of property and assets as part of his divorce judgment. In failing to disclose his property interests as required, [Finnerty] misrepresented his assets to the Probate Court, and he did so with the intent of concealing information from the Court." The hearing committee concluded that Finnerty had violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6), as appearing in 382 Mass. 769 (1981).[2] The hearing committee recommended the imposition of a six-month suspension.

Finnerty appealed, and the matter was referred to an appeal panel consisting of three board members. The appeal panel adopted the hearing committee's subsidiary findings and made additional findings, which may be summarized as

[2]Canon 1, DR 5-102(A) provides: "A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. (5) Engage in conduct that is prejudicial to the administration of justice. (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

follows: Finnerty's counsel instructed Finnerty "to value his personal assets on forms provided by [counsel], but not to value the assets of his law practice, which . . . would be appraised separately. . . . [Finnerty and his counsel] discussed the distinction between business and personal assets. . . . [Counsel] told [Finnerty] that any contingent or prospective legal fees would be part of the law practice and would be appraised separately. . . . [Counsel] instructed [Finnerty] not to list assets of his law practice as part of his responses to . . . interrogatories because, as he had instructed [Finnerty] from the outset of the divorce proceedings, [Finnerty's] law practice would be appraised separately."

The appeal panel recommended that the board reject the hearing committee's ultimate findings and legal conclusions. In its report, the appeal panel states in pertinent part: "In recommending that the Board dismiss this petition, we do not quarrel with the facts found by the hearing committee, although some of the conclusions it draws from the facts give us pause [footnote omitted]. Our disposition assumes the correctness of the findings. Instead, our disagreement is over the committee's identification of the 'critical issue' in the case: whether [Finnerty] believed, in his heart of hearts, the real estate interests to be personal assets. In our view, [Finnerty's] subjective beliefs about those assets were irrelevant in the context of the divorce litigation [footnote omitted].

"In the course of his divorce proceedings [Finnerty] was asked, in various documents and pleadings filed with the Probate Court, to identify his assets. It is uncontested that he listed his ownership of the law firm as an asset. It is also clear that his counsel instructed him not to value business assets or identify them separately because the law practice would be appraised by the wife's accountant. In characterizing the real estate interests as business or personal assets at this point, [Finnerty] was not called upon to swear to his belief as to their legal character. He was asked to make a classic legal judgement: the application of law to facts. In our view, so long as there existed a reasonable basis for concluding the interests were assets of the firm, there was no miscon-

duct in characterizing them as such. . . . [T]he hearing committee itself concluded that there was a reasonable basis for such a characterization when it opined that 'a court might determine that the interest in the property belonged to the corporation and not to [Finnerty].' We agree with [Finnerty] that such a conclusion should end the inquiry. . . . So long as [Finnerty's] decision to categorize the interests as law firm assets was legally defensible, as the committee implicitly concluded, that categorization was open to [Finnerty], whether as an advocate for a client or as a litigant on his own behalf."

In addition, the appeal panel reasoned: "Certainly, by warehousing, in effect, the evidence of the real estate interests with the hundreds of other files in his office, he diminished the likelihood that his wife would discover them. But he did understand that an appraisal would be made and that the files would have to be made available to his wife's accountant. The files were maintained in their customary place in his office at the time his wife's accountant arrived to perform what [Finnerty] and his counsel both believed would be a full appraisal of the practice. As we now know, the accountant did nothing of the sort and no files, let alone the relevant files, were actually valued. That [Finnerty] appears to have been rewarded for cutting it so close to the line may rankle [footnote omitted], but it is not professional misconduct.

"In the end, the hearing committee's decision reduces to the proposition that a lawyer, in making a statement to the court regarding the application of law to facts, can be disciplined for espousing a legal conclusion that he personally believes to be erroneous, even though there is a reasonable basis for drawing that conclusion. Neither the hearing committee nor Bar Counsel has cited any authority for this proposition, and we know of none." Accordingly, the appeal panel recommended that the petition for discipline be dismissed.

The board declined to adopt the appeal panel's report and, instead, voted "to adopt the Hearing Committee's report and its recommendation to file an Information with the Supreme

Judicial Court recommending that Mr. Finnerty be suspended from the practice of law for six months." Such an information was filed. Then, after hearing the parties, a single justice ordered dismissal of the petition "for the reasons stated in the report of the appeal panel." We conclude that Mr. Finnerty intentionally misrepresented to the Probate and Family Court his financial worth and thereby violated Canon 1, DR 1-102 (A) (4), (5), and (6). We reverse the order dismissing the petition for discipline, and we suspend Mr. Finnerty from the practice of law for six months.

In our view, the critical question is not whether Finnerty should have included his interests in 75 State Street and the Harbor Point Project in his listing of personal assets in his financial statement filed with the Probate and Family Court on March 14, 1985, as the hearing committee concluded. Also, in our view, the critical question is not whether Finnerty was justified in treating those assets as belonging to Thomas E. Finnerty, P.C., and therefore not listing them as personal assets. The critical issue is whether, in his financial statement filed on March 14, 1985, viewed in its entirety, Finnerty deliberately misrepresented to the court his total financial worth, including the fair value of his law practice and other assets, in order to obtain an unwarranted judgment, favorable to him, with respect to the division of marital assets. A conclusion that he did so is inescapable.

The record contains an incomplete copy of Finnerty's financial statement filed on March 14, 1985. The signature page is missing. A complete copy is unavailable to this court. Finnerty, however, does not suggest that he did not sign the financial statement and he does not disclaim responsibility for it. Indeed, the record contains earlier financial statements filed on Finnerty's behalf in his divorce proceedings which contain his signature as required by Supplemental Probate Court Rule 401 ("All financial statements shall be signed by the party filing the same and shall be subject to the pains and penalties of perjury"). As the hearing committee found, Finnerty "was familiar with the reporting requirements for financial statements . . . from his own experience as a law-

yer representing clients in divorce proceedings and from the advice he received from his own counsel in his divorce proceedings." We conclude, then, that, in his financial statement filed with the court on March 14, 1985, Finnerty represented to the court that the total value of his assets was a figure that was arrived at by adding the stipulated value of the incorporated law practice, $24,000, to the combined value of his former marital home, stock holdings, bank accounts and personal property. The representation did not reflect the monetary value of the hundreds of potentially fee-producing matters in the office of Thomas E. Finnerty, P.C., nor did it reflect the relevant interests in 75 State Street and Harbor Point Project. It is clear that the misrepresentation was deliberate and was designed to produce a judgment that was favorable to Finnerty and conceived in error.

It is immaterial that the valuation Finnerty attributed in the financial statement to the law practice, $24,000, was stipulated. Finnerty's representation to the court, that the total value of his combined personal and business assets was several hundred thousand dollars less than he knew it to be, was no less dishonest and inimical to justice because opposing counsel agreed to it. We conclude, as did the hearing committee and the board, that Finnerty thereby violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6).

We turn to consideration of the appropriate sanction. "Although the effect upon the respondent lawyer in any discipline case is an important consideration, the primary factor is the effect upon, and perception of, the public and the bar." *Matter of Alter*, 389 Mass. 153, 156 (1983), citing *Matter of Keenan*, 314 Mass. 544, 547 (1943). An effective judicial system depends on the honesty and integrity of lawyers who appear in their tribunals. See *Matter of Mahlowitz*, 1 Mass. Att'y Discipline Rep. 189, 192-194 (1979). This court has clearly stated that "we cannot approve of any practice in which an attorney misleads a court." *Matter of Palmer*, 413 Mass. 33, 39 (1992). Were we to condone such conduct by an attorney, whether as a litigant or as counsel, "the integrity of the judicial process would be vitiated." See *Matter of*

*Neitlich*, 413 Mass. 416, 423 (1992). Since we conclude that Finnerty misrepresented his assets to the Probate and Family Court during a contested divorce proceeding, a mere private reprimand or public censure is insufficient. The hearing committee, taking into consideration mitigating factors such as Finnerty's history of public service, the emotional impact of the divorce, and the supportive statements of his former wife, recommended that a six-month suspension be imposed, and the board adopted this recommendation. The board's recommendation is entitled to substantial deference. See *Matter of Alter, supra* at 157-158. In the circumstances, we agree with the board that a suspension from the practice of law for six months is an appropriate disposition. We have considered the cases brought to our attention by counsel and we are satisfied that this disposition is consistent with the sanctions imposed in other cases.

The order of the single justice dismissing the petition for discipline is reversed. A new judgment shall be entered in the county court that Mr. Finnerty is suspended from the practice of law for a period of six months. The order of impoundment is vacated.

*So ordered.*