Rufo, Robert C., J.
The plaintiff, Cape Cod Builders, Inc. (“Builders”), brought this action against the Commonwealth of Massachusetts Division of Capital Asset Management (“DCAM"), seeking to reverse DCAM’s denial of Builders’ application for recertification as a general contractor authorized to work on public construction projects. In its Motion for Judgment on the Pleadings (“motion”), Builders challenges the validity of the evaluations and the alleged false statements on which DCAM based its determination. For the following reasons, Builders’ motion is DENIED.
The proper review mechanism for this motion is one of certiorari under G.L.c. 249, §4 because the statute under which Builders bases its grievance does not afford a right to appeal before a court of law. See Walpole v. Secretary of Executive Office of Envtl. Affairs, 405 Mass. 67, 72 (1989). Review in the nature of certiorari is available of judicial or quasi judicial proceedings where no other form of review is available and review is necessary to correct a substantial injury or injustice arising from the proceeding at issue. See Id.; Warren v. Hazardous Waste Facility Site Safety Council, 392 Mass. 107, 117 (1984). A proceeding is *572 quasi judicial when it determines individual rights or interests, as opposed to political or legislative matters. See e.g. Warren, 392 Mass. at 117 (certiorari review not available because determination that proposal to locate hazardous waste site was feasible and deserving of state assistance was political in nature); Moskow v. Boston Redevelopment Auth., 349 Mass. 553, 570 (1965), cert. denied, 382 U.S. 983 (1966) (certiorari review not available because approval of urban renewal plan was political); Lucia v. Water & Sewer Commissioners of Medford, 332 Mass. 468, 470 (1955) (rate-making is legislative function not subject to cer-tiorari review). Certiorari is available to review an administrative board’s application of criteria established by rule or statute, after a hearing required by law, but is not available with respect to wholly discretionary decisions as to which no rule or law entitles any affected party to a hearing. See, e.g., Walpole, 405 Mass. at 72-73 (certiorari review not available where approval of siting of sludge disposal facility was wholly discretionary and did not require hearing); School Comm. of Hatfield v. Board of Ed., 372 Mass. 513, 516-17 (1977) (certiorari review not available where denial of school building assistance funds was wholly discretionary, without standards for determining eligibility other than “best interest of the town”); Kern v. Personnel Adm’r, 28 Mass.App.Ct. 938, 939-40 (1990) (certiorari review not available of discretionary administrative decision not to request expedited procedure for appointment from eligibility list).
The standard for certiorari review varies according to the nature of the action of which review is sought. Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217 (1989); FIC Homes of Blackstone, Inc., v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. 681, 684 (1996). Where an administrative board has broad discretion to determine whether to grant an exemption from its regulations, the court’s review is limited to determining whether the decision is arbitrary or capricious or an abuse of discretion. See T.D.J. Development Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 129 (1994); Forsyth Sch. for Dental Hygienists, 404 Mass. at 217 & n.2. A decision is not arbitrary or capricious unless “there is no ground which ‘reasonable [persons] might deem proper’ to support it.” FIC Homes of Blackstone, Inc., 41 Mass.App.Ct. at 685, quoting T.D.J Development Corp., 36 Mass.App.Ct. at 128. A decision that is based on legally untenable grounds, or on factors that are irrelevant under the governing law, is arbitrary. Id. at 218; see Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 568 (1996) (“[i]f the agency has acted for reasons that are extraneous to the prescriptions of the regulatory scheme, but are related, rather, to an ad hoc agenda, then that agency has acted arbitrarily”); see also FIC Homes of Blackstone, Inc., 41 Mass.App.Ct. at 684.
When a statute or regulation governing administrative action refers to a broad standard, rather than specifying narrow and objective criteria to be applied, judicial review does not extend to assessing the strength of the evidence supporting the action. See Caswell v. Licensing Comm’n for Brockton, 387 Mass. 864, 878 (1983); Goldie’s Salvage, Inc. v. Board of Selectmen of Walpole, 31 Mass.App.Ct. 726, 731 (1992); Yeradi’s Moody St. Rest. & Lounge, Inc. v. Board of Selectmen of Randolph, 19 Mass.App.Ct. 296, 300 (1985). Where, however, a decision is based on factual findings, the court may consider the evidentiary basis for those findings, since a decision based on facts not supported by substantial evidence is arbitrary and capricious. See generally Doherty v. Retirement Bd. Of Medford, 425 Mass. 130, 135 (1997) (applying substantial evidence standard to review of retirement board decision imposing forfeiture of contributions); Konstantopoulos v. Whately, 384 Mass. 123, 136-37 (1981) (applying substantial evidence test to review of revocation of entertainment license). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. In considering whether substantial evidence supports the facts found, the Court must examine the entire record and take into account whatever fairly detracts from the weight of the conclusion reached. Doherty, 425 Mass. at 131; Pyfrom v. Commission of Dep’t of Pub. Welfare, 39 Mass.App.Ct. 621, 624 (1996). The Court may not, however, substitute its judgment for that of the administrative board under review; where the evidence could reasonably support conflicting conclusions, it is up to the board, not the court, to resolve the conflict. Doherty, 425 Mass. at 135, 141-42.
DCAM is an agency created to oversee major public construction and real estate services for the Commonwealth of Massachusetts. See G.L.c. 7, §§4A, 40A; see also G.L.c. 30A, §1(2) (defining “agency”). As part of its responsibilities, DCAM has overall supervision in administering the competitive bidding statutes of G.L.c. 149, §§44A-44H. The Legislature enacted these statutes to “ensure that the awarding authorify obtain the lowest price among responsible contractors . . .” Annese Elec. Servs., Inc. v. City of Newton, 431 Mass. 763, 767 (2000) (internal quotations omitted). Inherent in this statutory procedure is the understanding that winning bids are awarded on the basis of efficiency and low cost. Id.
To participate in bids for public construction works, a “[c]ontractor must establish to the satisfaction of DCAM that it is competent and responsible [and] DCAM shall not issue a Certificate of Eligibility ... if [it] determines [otherwise].” 810 Code Mass. Regs. §4.04. DCAM “shall establish in [its] Guidelines a minimum Overall Numerical Rating required for certification.” Id. at §4.04(1). Nevertheless, the “Commissioner reserves the right not to certify a Contractor and may decertify a Contractor whom the Commissioner determines is either not competent or responsible even *573 though the Contractor otherwise meets the Overall Numerical Rating for certification.” Id.
In determining whether a contractor is competent and responsible, DCAM may rely on the evaluations that awarding authorities submit.[1] 810 Code Mass. Regs. §8.02(1). The evaluation forms must be completed and signed by an “official from the Awarding Authority, architect/designer representing the Awarding Authority, or any other party responsible for the oversight of the project. . .” Id. at§8.02(3)(b) (emphasis added). The “Awarding Authority must certify in all evaluation forms as to the accuracy of its contents ...” Id. at §8.02(4).
Each contractor must apply for certification annually. G.L.c. 149, §44D(13). DCAM may deny a certification petition if it determines that the contractor has:
(a) a record of three or more Project Ratings that fall below the passing score established in the Guidelines on three or more separate Building Projects; or . . . (e) willfully suppl(ied) materially false information incident to obtaining or attempting to obtain or performing any public contract. . .
810 Code Mass. Regs. §4.04(8).
Upon DCAM issuing a preliminary determination, the “Contractor aggrieved [thereby] may . . . request copies of the information upon which DCAM relied in making its preliminary determination [and] [wjithin ten business days [thereof], the Contractor may submit further information to DCAM with a request for reconsideration.” 810 Code Mass. Regs. §4.08. “DCAM shall issue a final determination regarding any action or decision . . . within 30 business days from the date of its preliminary determination.” Id. A “Contractor aggrieved by the final determination of DCAM may appeal in writing to the Office of the Attorney General ...” Id. This matter is before the court after undergoing all of the previously described procedural steps, including a final determination by the Office of the Attorney General.
In deciding the motion before it, this court finds it appropriate to first define its own role in this endeavor. Normally, the court would only review the Office of the Attorney General’s determination because that constitutes the final agency decision. Here, however, the person whom the Attorney General appointed to review DCAM’s actions had a conflict of interest because she provided legal advice in connection with a contract that became the basis of an unsatisfactoiy evaluation resulting in DCAM’s decision to deny Builders’ recer-tification application. See S.J.C. Rule 3:09, DR 3(E)(1)(b) (“A judge shall disqualify himself ... in a proceeding in which the judge’s impartiality might reasonably be questioned [if] the judge served as a lawyer in the matter or controversy"); see also Civil Serv. Comm’n v. Boston Mun. Ct. Dep’t, 27 Mass.App.Ct. 343, 347-48 (1989) (persons sitting in quasi-judicial capacity are “governed by the same high standards as have been set forjudges [and must thus] be impartial and . . . not have already made up their minds through prejudgment of [the] facts ... or [the] parties involved . . .”). In the interests of fairness and justice, this court finds it necessary to disregard the decision of the Office of the Attorney General and to review DCAM’s determination de novo.
Turning to the merits of the case, this court finds that DCAM acted well within its discretion in denying Builders’ recertification application. First, DCAM properly decided that Builders had incurred at least three unsatisfactoiy evaluations within five years of the date of the recertification application.[2] 810 Code Mass. Regs. §4.04(8)(a). All of the contested evaluations were completed by people who oversaw the projects.[3] 810 Code Mass. Regs. §8.02(3)(b). More importantly, all evaluators certified that the evaluations represented a “true analysis of [Builders’] performance record on [each] contract.” 810 Code Mass. Regs. §8.02(4).
Furthermore, other than that of the Steamship Authority, the other evaluations contained detailed reasons as to why Builders’ performance was unsat-isfactoiy. Aside from general tardiness, the Monson evaluation also contained the following complaints:
The contractor was unavailable to supervise the subcontractors. He was unobtainable by phone and did not return calls in a timely manner. The contractor did not... follow-up when issues on the job arose until several weeks later. (Example: Leaking skylight.) The paperwork was not completed and submitted in a timely manner. Repeated phone calls had to be made requesting necessary paperwork. At one point the same continuation sheet was submitted with two different applications for payment. However, the contractor would call repeatedly looking for payment.
The Brewster Housing Authority evaluation contained similar misgivings. Apart from asserting that Builders lacked “experience in area of [w]indow [replacement,” the evaluation also states:
[T]he contractor frequently did not arrive for scheduled appointments. At times, had too few or no men on the site causing inconvenience to tenants and maintenance. [There was a] [l]ack of communication with maintenance on scheduling and appointments and getting necessaiy paperwork to office. [Contractor] had to be asked numerous times for required paperwork. [There was a] [l]ack of work coordination. [Housing Authority] Maintenance had to assume on site supervision sometimes in order to be sure that the project moved ahead.
The Town of Barnstable (“Town”) evaluation also contains a myriad of complaints.
Timing was an issue as well as other problems:
Contractors [sic] workers were illegal aliens and were not allowed to start work. [T]he bonds provided *574 by the Contractor were not factual which required additional time and effort for the Contractor to obtain proper bonding. [T]he Contractor did not have a full-time representative on site. Contractor had to be told by Project Management of Subcontractor safety concerns [which] were addressed. Communication from the Contractor was consistently poor despite requests by Project Management for documentation regarding the project. Submit-tals were generally late and often provided insufficient data for Project Management to make selections with regard to products.
As evidenced above, the evaluations are based on legitimate and specific concerns resulting from Builders’ shortcomings.
Moreover, DCAM correctly denied the recertification application because Builders had submitted “materially false information incident to obtaining or attempting to obtain or performing [a] public contract...” 810 Code Mass. Regs. §4.04(8)(e). A “fact is material if, viewed objectively, it directly or circumstantially had a reasonable and natural tendency to influence ...” In the matter of Angwafo, 453 Mass. 28, 35 (2009). Unlike common-law fraud, for instance, the regulation does not require that DCAM find that the awarding authority was in fact influenced by the materially false statement. See Id.
DCAM properly found that Builders supplied a materially false statement because they submitted a payment bond form (“form”) without having actually secured a bond. The form, when viewed objectively, contained a materially false statement because it listed the surety and the terms of the bond in detail. The form was signed by two Builders principals and it was stamped “to be mailed,” thus indicating that the original issuance would follow. The form was included in all of the necessary- contract paperwork that Builders submitted to the Town. This is significant because the Town’s purchasing agent reviewed these documents and the qualifications of Builders’ purported surety, ACSTAR, before moving along with the project.
It is further evident that the form contained materially false statements when considering the surrounding circumstances. The form was dated July 11, 2006, but the contract between Builders and the Town was not executed until August 18, 2006. Yet, the Town’s instructions to the winning bidders require them to furnish their performance bond “[w]ithin ten (10) days after the date of Notice of Award of Contract . ..” Builders did not furnish a performance bond until October 18, 2006, exactly two months after executing the contract. In fact, they made no effort to inform the Town about the absence of a bond, but were forced to seek out another surety when the Town’s purchasing agent contacted them regarding the missing bond on October 4, 2006. Upon being confronted by the Town, Builders offered cash in lieu of the bond. Even when Builders obtained the bond, it was not issued by ACSTARbecause Builders had never actually obtained a bonding commitment from them.
Finally, although reliance is not relevant to the materiality issue at hand, the conduct of the Town’s representatives shows that they, in fact, did rely on the materially false statements. From the time of receiving the form up until October 4, 2006, the Town’s purchasing agent was under the impression that ACSTAR had issued the bond for Builders. We know as much because, on October 4, 2006, the purchasing agent contacted ACSTAR to “find out where the confirming copies of the bonds were . . .” Thus, the Town had assumed that a valid bond issued by ACSTAR existed.

ORDER

It is therefore ORDERED that Cape Cod Builders, Inc.’s Motion for Judgment on the Pleadings be DENIED.

‘DCAM may also obtain evaluations . . . through telephone interviews.” 810 Code Mass. Regs. §4.06(4).

The court notes that the evaluation of the Steamship Authority was inadequate and thus DCAM erroneously considered it in its decision. That submission did not provide a sufficiently detailed basis on which the evaluator rendered its unsatisfactory evaluation because it was riddled with con-elusory statements such as “One of the worst jobs ever done here,” “Sub[contractors] had all sorts of issues” and “It was a nightmare.”

The Monson and Brewster evaluations were completed by the Executive Directors of their respective Housing Authority, whereas the Barnstable evaluation was completed by its Purchasing Agent who was in charge of contract compliance.